## A97A1135. GILPATRICK v. THE STATE.
(487 SE2d 461)

BIRDSONG, Presiding Judge.

Appellant Marvin Keith Gilpatrick appeals his final judgment of conviction in a bench trial on the sole ground that the trial court erred in denying his post-judgment motion for correction of sentence.

Appellant was found not guilty of reckless driving and vehicular homicide in the first degree, but was convicted of the lesser included misdemeanor offense of vehicular homicide in the second degree, speeding, passing in a no-passing zone, and improper lane usage. All of these offenses were averred in the indictment as occurring on July 4, 1994. At trial, witnesses testified that appellant's truck was traveling in the opposite direction than decedent's vehicle when appellant's truck left its traffic lane on a sharp curve and collided "head-on" with decedent's vehicle. An expert opined that appellant's vehicle was traveling between 37 and 49 mph in a 30 mph zone at the time of the collision. Evidence also was introduced that prior to the collision appellant had passed a car, going in the same direction, which was traveling at the speed limit. An accident reconstructionist, called by the State, testified, based on his examination of skid marks at the collision scene, that appellant was speeding at the time of the collision. This testimony was corroborated in part by testimony of the investigating officer based inter alia on his observation of the scene of the collision and the impact damage to the vehicles. (Note: Appellant was not charged with two separate counts of speeding.)

In announcing its findings the trial court pertinently explained: "I have carefully considered the evidence in this case and find as follows. And I'm going to do so *in time sequence* as to counts. With

regard to count four, passing in a no passing zone, I find [appellant] guilty. [In time sequence this event occurred at the same time as the first incident of speeding asserted by the State, nevertheless, no specific finding of speeding at this sequential point is made by the trial court.] With regard to counts one [vehicular homicide], two [reckless driving], three [speeding], and five [improper lane usage], I'm going to *consider* and discuss *these together*." (Emphasis supplied.) In discussing the charge of reckless driving, of which appellant ultimately was acquitted, the court stated in its findings: "Here I am persuaded beyond a reasonable doubt that the defendant was driving in excess of the posted speed limit *at the time of the collision*, and certainly was driving too fast for the conditions then existing on the roadway. . . . However, the evidence does not indicate that the speed was extremely excessive. It indicates that the speed *at the time of impact* would have been 40 to 46 miles per hour. That would have been *at the beginning of the skid*, I believe. The evidence revealed that the defendant did attempt to slow his vehicle when it became apparent that *he was going too fast*. The skid marks indicate as much. Unfortunately, he was unsuccessful *and lost control of his vehicle and went across into the other lane where the collision occurred*." (Emphasis supplied.) After announcing appellant's acquittal of reckless driving the court further sequentially found: "I am persuaded, however, that [appellant/defendant] is guilty of exceeding the posted speed limit as charged in count three, and that he is also guilty of improper lane usage as charged in count five, *and that these violations* were the direct and proximate cause of the death of [the decedent]. *And for those reasons*, I am going to find that [appellant/defendant] is guilty of homicide by vehicle in the second degree." (Emphasis supplied.) At no time in these findings did the court announce, in time sequential order or otherwise, that it found appellant guilty of the separate offense of speeding before the events giving rise to the collision.

During the hearing on sentencing conducted two months after trial, the court observed: "I think this is the crucial distinction that has to be made . . . if the finding of the court was that he was speeding *at the time of this accident* that it would merge. On the other hand, if he was speeding prior to that time, then it would not merge. And I believe the finding was it may not have been specifically clarified on the record that it was prior to that time." (Emphasis supplied.) Thereafter, the court stated: "Reserving the question of whether or not the finding of the court was in fact a finding of speeding at a time other than the time when the collision occurred, I think it is appropriate to impose a sentence of incarceration [on] each of these counts to run consecutive with one another, and that that sentence be 12 months." The court concluded the hearing, after imposing sentence, by stating it would review the transcript and make a deter-

mination whether the correct sentence was a total of 24 or 36 months. Appellant ultimately was sentenced for Count 1, second degree vehicular homicide, to 12 months to serve; for speeding, 12 months to serve (consecutive to Count 1); and for passing in a no-passing zone, to 12 months to serve (consecutive to Count 1). Further it was held that the offense of improper lane usage merged with Count 1.

At a subsequent hearing on appellant's motion for correction of sentence, conducted approximately 11 months after trial, the trial court explained its imposition of a consecutive sentence for the speeding offense as follows: "My *recollection* of it is that my determination that the defendant was guilty of speeding in the case was based on the determination in the evidence that existed regarding the observation that was made of him by witnesses at the entrance and/or exit of a subdivision, which was some distance down the road from where the . . . actual collision took place. I would agree with [the State] that there really was no evidence as to the speed of the vehicle, with the possible exception of the testimony of the arresting officer, the investigating officer, about the impact damage to the vehicle. And *although the transcript reflects that the finding was made that the death of the victim in this case was the result of the speeding as well as improper lane usage, and therefore the underlying offenses for the vehicular homicide* suggests that that was the case, but my *recollection* is that my determination of the . . . guilt of speeding was based upon the observations of witnesses who observed his vehicle some distance down the road." (Emphasis supplied.) Later in the hearing, after being reminded of the trial testimony of the accident reconstructionist that the skid marks established appellant was traveling in excess of the speed limit at the time of the collision, the trial court responded: "I recall that to be the evidence and I don't disagree with what you say. I do *recall*, however, that the court's determination *at the time, although, [I] may have concluded he was speeding as well at the time of the collision,* but there was evidence of speeding some distance down the road immediately prior to the collision, and that was the *basis* for the sentence." (Emphasis supplied.) (Examination of the trial and hearing transcripts reveals that discrepancies exist between the trial court's recollection of the findings he made (11 months earlier) and the actual findings as officially reported in the certified trial transcript.)

Although appellant concedes he was properly sentenced for passing in a no-passing zone, as that offense occurred prior to the specific occurrence which led to the vehicular homicide, he contends, however, the 12-month consecutive sentence for speeding is void as that offense merged into the vehicular homicide conviction as a result of the trial court's specific finding that this offense was one of two

offenses which combined as the proximate cause of the vehicular homicide; that is, the speeding offense was one of the contributing causes of the vehicular homicide. *Held*:

Any person who causes the death of another person, without an intention to do so, by violating any of the provisions of Title 40, OCGA, except for those Code sections thereof which are listed in OCGA § 40-6-393 (a) as supporting a conviction for homicide by vehicle in the first degree, commits the offense of homicide by vehicle in the second degree "when such violation is the cause of said death." OCGA § 40-6-393 (b).

To constitute the offense of vehicular homicide in the second degree, an offender must commit one or more of the underlying traffic violations specified in OCGA § 40-6-393 (b) and such offense or offenses must be "the cause of said death." Those traffic violations underlying the offense of vehicular homicide constitute lesser included offenses of vehicular homicide, pursuant to OCGA § 16-1-6 and conviction of both offenses is proscribed under the provisions of OCGA § 16-1-7. *Rank v. State*, 179 Ga. App. 28, 30 (2) (345 SE2d 75). Accordingly, a conviction for such an underlying offense would merge into the crime of second degree vehicular homicide. Id.; compare *Conyers v. State*, 260 Ga. 506, 509 (6) (b) (397 SE2d 423), citing *Rank*, supra, and holding that underlying offense of improper backing merged into the vehicular homicide conviction but the offense of prohibited stopping did not as it was not the underlying cause of the homicide.

It is a general rule that "an accused cannot receive a sentence greater than that prescribed by law for the crime for which he was indicted and convicted." *Black v. Caldwell*, 231 Ga. 589, 592 (203 SE2d 208); *Mallarino v. State*, 190 Ga. App. 398, 399 (1) (379 SE2d 210). In *McNabb v. State*, 180 Ga. App. 723, 725 (5) (350 SE2d 314), it was held that the trial court erred in sentencing the defendant on the lesser offenses of both reckless driving and DUI when the trial court also had sentenced defendant on the greater offense of vehicular homicide in the first degree. In doing so, we noted: "Had the jury revealed which of the lesser offenses served as the foundation for the homicide verdict a sentence on the remaining lesser offense may have been appropriate, but as such information does not appear in the record the defendant may not be sentenced for either of the lesser included offenses [of reckless driving and DUI]." Id. The facts of this case differ from those in *McNabb*, supra. The case at bar was a bench trial and the trial transcript reflects the trial court announced it had considered both improper lane usage and speeding as the direct and proximate cause of the vehicular homicide. Further, in announcing its findings the trial court did not affirmatively find, either sequentially or otherwise, that appellant was guilty of a separate speeding

offense which was not one of the underlying offenses constituting the direct and proximate cause of the vehicular homicide. Subsequently, however, the trial court stated its recollection that it had based its speeding conviction on an earlier act of speeding by appellant which was unrelated to the vehicular homicide. Examining the trial and subsequent hearing transcripts in their entirety there exists an ambiguity between the trial court's recollection of the basis for his conviction of appellant for speeding and the basis thereof as announced by him in the official transcript. The latter reflects that the trial court in fact convicted appellant of a speeding offense which was the direct and proximate cause of the vehicular homicide of which appellant was found guilty. " 'The rule has been laid down by the Supreme Court, and applied by this court, that sentences for criminal offenses "should be certain, definite, and free from ambiguity; and, where the contrary is the case, the benefit of the doubt should be given to the accused." ' " *Dilas v. State*, 159 Ga. App. 39, 40 (1) (282 SE2d 690); *Favors v. State*, 95 Ga. App. 318 (97 SE2d 613) and cases cited therein. Resolving this ambiguity in favor of appellant, as we are required by law to do, we find that the sentence imposed is void, because it exceeds the maximum punishment allowed by law for the vehicular homicide offense and the remaining separate offense of which appellant was convicted (passing in a no-passing zone) which did not merge into the vehicular homicide conviction. The remedy for this error is for the court to recall the defendant and sentence him as provided by law and consistent with our above holding. See *Sherman v. State*, 142 Ga. App. 691, 692 (237 SE2d 5). The case is therefore remanded; defendant shall be resentenced in accordance with this direction.

*Appeal remanded with direction. Ruffin and Eldridge, JJ., concur.*

DECIDED JUNE 4, 1997.

Before Judge Gault.

*Boyce, Ekonomou & Atkinson, William M. Coolidge III*, for appellant.

*Garry T. Moss, District Attorney, Cecelia Harris, Assistant District Attorney*, for appellee.

